Dachon et al. vs. DST Systems et al. & Ferguson et al. Mr. Schemmerhorn Good morning, Your Honors, and may it please the Court. Andrew Schemmerhorn on behalf of the Appellant Arbitration Claimants. DST represented to a federal court and to its employees that their claims can and must be arbitrated on an individual basis. The Court and DST employees relied on that promise. That should be the end of the story. I thought the end of the story here depended upon whether the District Court could issue an injunction under the All Writs Act to preserve its jurisdiction. And that's the issue in this case. Not whether you can arbitrate or not arbitrate, or whether the arbitration awards are valid or not, but simply whether the District Court could issue this injunction to preserve its jurisdiction. That is the issue that brings us here? Yes. The District Court entered an injunction. And that's the only one we have to decide, isn't it? Well, I don't think so. The District Court entered an injunction on the basis of the certification of a mandatory class. This court's review of that injunction includes- So you think it brings up the certification question? I think it absolutely does. We rejected that. There was an application to review and a motions panel rejected that. So why would we in any way revisit that? Well, I don't view the initial rejection of the Rule 23 application- I don't understand how that motion, the preliminary injunction under the All Writs Act, somehow then reaches to the certification of the class. The way we see it, Judge? I know the way you see it, but I don't see it that way. And that may be. I think the issue then becomes- So anytime that there's a piece of the, that someone's subject to an All Writs injunction in a class action and someone thinks that's an abuse of it, that also brings up the merit. Because if it's an abuse because it's an inappropriately certified class, that brings up the ability to litigate the appropriateness of the class certification, notwithstanding an earlier rejection of the 23F application. I don't mean to suggest that in all cases that would be true. I think this case presents a unique circumstance. But this court need not- I tell you, I've only been doing this 20 years. This is a whopper of a case with all kinds of threads. But Judge Walker's framed the question. I think the only issue that's in front of us is the appropriateness of the injunction. And Judge, if that's true and if that's what the court thinks, I won't quibble with it. But then the issue becomes, should the court uphold or dissolve the injunction? Judge Lowry in the Western District posited to the DST the possibility that they could pay the arbitration claimants twice under the voluntary payment doctrine. Let's take a step back. Now you're looking at Rule 65, aren't you? And the rules pertaining to preliminary, aren't you? And here this is an All Writs Act just to preserve the jurisdiction of the court. Stop what you're doing so this case can proceed. Right, and I think what I mean to suggest is that the chronology of events here I think is important. The Western District had jurisdiction first over this case and these arbitrations. The Western District exercised that jurisdiction by compelling arbitration at DSTs and systems. But we have to look at where we're at now. If there is a mandatory certified class in New York, right, and the claimants who are part of that mandatory certified class go out and try to resolve those claims that are part of this class through arbitration in other courts, is it your position that under the All Writs Act the district court who has the mandatory certified class can't stop that? Has to let all of these claims that are completely inconsistent with a mandatory class. Just has to sit there and watch this happen. Is that your position? No, Judge, but that's also not what's happened here. That is exactly what happened here because when the mandatory certification order was issued, you can correct me if I'm wrong, over 100 different cases to confirm arbitration where motions were filed. There were motions made before the arbitration panels that they could continue, that the fact that there's a mandatory certified class didn't mean that arbitrations can't go forward. They put in a piece of paper that suggested that you also took the position that compelling new arbitrations could happen notwithstanding the mandatory certified class. All three of those things completely undermine the idea that these claims reside in one place in the mandatory class, right? All those things completely inconsistent? Well- They all happen after the certification of the class, right? I guess I would make two points about that. I mean, the first is one that Judge Lowry in the Western District made, which was there was nothing in the class certification order itself that barred the continuation of the claims pending and completed. By this time, hundreds of claims have been completed in arbitration. DST was paying arbitration awards- Well, maybe the ones that are completed can be carved out at some point. I don't know. But in terms of the actual operation of the class, it depends upon the ability of the court to preserve its jurisdiction, to continue the class action, and to see its resolution. There are other ways in which you could have attacked and tried to attack, but were unsuccessful, the certification of the class. But this is not – we're not here to examine whether the class should be decertified. We're here to examine whether the district court acted appropriately in issuing an injunction under the All Writs Act to preserve its jurisdiction. And the scenario posited by Judge Bianco was, you know, it doesn't make sense to allow a bunch of parallel proceedings to go forward in various other courts. But that's not what has happened here. What happened here is that various proceedings had been completed in the state of Missouri under- And that may be the case. But then Judge Bianco specifically asked you about cases that were filed for arbitration after the issuance of the order. Judge- And, well, now we're finished. Isn't that problematic? After Judge Carter entered his class certification order, all we filed were motions to confirm. And we did that under both Eighth Circuit and this court. But you also took the position that the arbitrations could go forward, and you took the position that motions to compel – not to motions to confirm, but that motions to compel could be filed. And there was a line that says, we're going to keep going until there's an injunction. We're going to keep going. That was your position, right? And you're saying, notwithstanding, that was your position, that all those things could go on, notwithstanding the mandatory class that the district court just had to let you do all those things. I see my time is up. But to answer your question, we did not file a motion to confirm after he entered a mandatory class. All we did was when – both sides offered their position to the court in Missouri. Can you tell the arbitration panel that these arbitrations could go forward? I thought there was a document that said our position is, notwithstanding the certification of the class, that the arbitrations could go forward. Wasn't that your position? There was a correspondence between the AAA and us and between DST and the AAA, and we certainly took the position that we thought that our arbitrations that were directed, that were ordered by a district judge in Missouri prior to the certification of a mandatory class, were not bound up by that class. It was your position that motions to compel new arbitrations could be filed. That was your position, too, right? No, Judge, I just want to correct you.  But we did not pursue a motion to compel after Judge Carter entered a mandatory class. There was a motion to compel pending at the time in front of the Western District, and the court asked the party's position. And so we certainly took the position – I mean, we're taking the position now in front of you – that the mandatory class didn't include those claims that were bound by the decision in Ducharme. We also took the position that despite a mandatory class, much like Judge Lowry posited herself, there could be both a mandatory class that includes the arbitration claimants and the arbitrations. They can go forward. And what happens in a mandatory class is much like she suggested. Either Judge Carter at the end will carve those people out, or he will give them the benefit of what they were awarded. But now we have the injunction, and if the injunction survives appeal, is it your position that you'll continue to file new applications to compel arbitration in the Western District of Missouri? No, I want to be clear. It's never been our intent to violate an injunction. I don't believe that we have, and we don't intend to. Now, we don't think that the injunction is proper, much like we don't think the class certification court – I understand that. I understand that. But what we have here is we have two tracks, and the history behind how we end up this way is more than interesting. But right now what I need to know from you is, is absent a reversal, a vacature of the injunction, it's your intention to not commence additional arbitrations in the Western District of Missouri. That's right. So there's a finite number of arbitration awards that have been done, or there may be cases in the process of working towards an award. There are 9,000 covered employees, correct? That's right. And the original appeal to the Eighth Circuit vacated, what, 77 or more of the original awards, or 93 or more of the original awards because of the diversity issue and the jurisdictional twist that you got caught in because of the Supreme Court decision. That's right. But, A, what is the status of any of the remanded cases, and B, do you consider those cases, is it your position that those cases are not reached by the injunction at this point in time? No, our position is that we're barred by the injunction from filing any new actions to confirm. What about confirming the arbitration award? I mean- Or pending arbitration award, aren't you barred from that? Yeah. As much as we'd like to do, as Judge Lowery instructed, we feel that Judge Carter's injunction bars us. So it is not our intent to file any new motions. We're not talking about any new motions, including motions to- Exactly. Confirm. But to go back to Judge Wesley's question, in terms of ones that were filed, they're all now done. The district court confirmed, there were some that were dismissed, and then the ones that remained have now been confirmed. There are no motions to confirm pending now in the Western District of Missouri. Is that accurate? That's right. Now, the ones pending, DST has told the Eighth Circuit that they intend to appeal. Right. So those will be pending for some time, I suspect. They're pending in the sense that there was a judgment to confirm that arbitration, but then there was an injunction issued to try to stop the settlement here. That's the part that's pending. But there are no open motions, pending motions for confirmation in Missouri, right? That's right. Okay. All right. Thank you. You reserve three minutes for rebuttal. Thank you. All right. Mr. Clayton. Yes. For Luke Clayton from Paul Weiss for DST, we believe that the only issue here on appeal is the propriety of the All Writs Act injunction. Judge Carter also issued it under Rule 65. The All Writs Act is a very important protection for district court jurisdiction. It's a broad statute. It's an abuse of discretion standard, and it allows every federal district court to issue an injunction that is necessary or appropriate in aid of its jurisdiction. Judge Carter here was, as the record shows, careful, deliberate. He issued this injunction only after he had certified the class. He spent a lot of attention and time on the issue of certifying the class. After he certified the class, although these plaintiffs said actually when they went up on 23F to try to challenge the class certification, they said in their 23F papers to a different motion panel of this court, they said this injunction extinguishes our arbitrations. They did recognize that a mandatory class and mandatory classes are the rule. Under ERISA, we cited at least 25 district courts that have certified mandatory classes. They recognized this was the rule. Then what they did is they went out immediately, three days after the class certification order, they began to file one after another a total of, I think, 177 of these petitions to confirm in Missouri. At that point- Well, to be fair, your client was fairly interested and happy to arbitrate for a long period of time. So, I mean, you set the table. Your client set the table for this. Your client in Ducharme in the class action out in Missouri argued no, no class action arbitrate. So this is, I've never seen so many letters just before oral argument from counsel casting dispersions. It's like a fight between two brothers or two sisters or brother and sister, what you say about each other. The fact of the matter is, is that you have a number of confirmed awards that did survive the Eighth Circuit's review. And you had a number of other confirmed awards for which a jurisdictional analysis had to be conducted. Well, your honor, I'm sorry, your honor. Thank you. So, let me ask you this. We are only, I think Judge Walker's framed the issue quite clearly, and I agree with it. The only issue in front of us right now is the injunction. Yes. And the authority of it as to whether there was an abuse of discretion, right? Yes, yes. There may be significant ramifications for it, but what those are may go to whether it was or was not an abuse of discretion, but they don't drag us into a merits analysis, correct? Absolutely, your honor. And the only reason that I was going through these statements that were made by them was to show that Judge Carter first issued a class order, which brought everyone in. Normally, what happens when a mandatory class is certified, you don't see people starting to file other actions. What happened then was these petitions got filed and statements were made, we quote them in the brief, where they say, Judge Carter's ruling is irrelevant. Judge Carter apparently disregards the law. And they did write a letter to the AAA, and they said, because we informed the AAA of the certification. They wrote a letter back and said- Well, this all then goes to whether the Judge Carter did or did not abuse his discretion. Exactly. Exercising the Arbiters Act. Exactly. Fine. And that's what, right. Now, let me ask one other question, because I'm just trying to understand what the whole world looks like here. Yes. Have you appealed after the remand from the circuit? Have you appealed any confirmation orders back to the circuit- We are. On the grounds of non-arbitrability or taking any kind of arguments as expressed in this circuit with regard to the representative capacity that's necessary to raise a risk of fiduciary type claims. We will be filing an appeal. We haven't filed a notice of appeal. We're going to file it in the next few days. From the district court's order on remand from the Eighth Circuit, focusing on the transfer issue. And I have to add, I know how complicated it is. I will tell the court, we knew these letters were coming in. I guarantee you, we sat in our office and we said, let's not make them mad at us with another one. So maybe we made a mistake, but I just want to say we were thinking about it. Yes. I was saying that we hadn't got one in an hour. I was surprised. I was a little disappointed in you that I didn't get one this morning. Your Honor, we can arrange it. But I just want to add one wrinkle. It's almost unbelievable, but there's one other wrinkle. And I think it's in the letters. The court may not have noticed it because of the flurry. What happened was when we wrote to Judge Carter, the parties wrote to Judge Carter like a week ago and said, we have a settlement in principle of the entire case, including the Department of Labor. And that settlement actually basically provides that these arbitration awards essentially will be paid. And we said, we're going to submit that settlement within a week. At that time, when that letter came in, the plaintiffs in this case went to Judge Lowry, and they asked for a temporary restraining order to enjoin us, my client DST, from taking part, from executing or moving towards that settlement. And Judge Lowry asked us to get on the phone five hours later after we got notice of the injunction. She enjoined us. Let me ask you a question that relates to that, but it relates to the injunction we have before us. There's one part of that that I think is, in my experience, highly unusual, and you can tell me where I'm wrong. Stopping new claims or new lawsuits from being filed, there are cases, and you cite them, including Baldwin, that says the All Reds Act is perfectly appropriate to prevent thwarting of a district court's order. But here, the injunction also, and I think you even took the position, didn't allow them to continue to litigate in the district court or even maybe before the Eighth Circuit that you could enjoin a party from continuing an appeal in the Eighth Circuit. And I've never seen a case where you enjoin a party from continuing to litigate another federal case, even though it was directed at the party. In essence, Judge Carter was enjoining another federal court from hearing the cases that are before it. So why shouldn't we be concerned about that? Because that's incessant. Now it's happened to you. What you were just describing now has happened to you here, where you've been enjoined from continuing a litigation and a settlement that you hope to achieve. So why isn't that part of the injunction problematic? Because that didn't happen. In other words, what happened was they did continue. For the actions that were still pending, were pending at the time the injunction came down in Missouri, those confirmation actions, those litigations continued. And when the appeal went up to the Eighth Circuit, the injunction was in effect. And the Eighth Circuit said, we told the Eighth Circuit when the initial appeal happened, we told the Eighth Circuit about the injunction. And there's an order, a quick order that the Eighth Circuit wrote, which is in the record. And the Eighth Circuit said, we don't read the injunction as staying. What we actually said to the circuit was, we have all these things happening in New York. We'd like to stay the briefing of this case. The Eighth Circuit said, we don't read that injunction as stopping people from briefing the case. And while the New York injunction was going, we appealed. We finished the appeal. We argued the appeal to the Eighth Circuit. And they issued their opinion. It came back to Judge Lowry. And she was told by the circuit. The circuit said, there's an interesting passage in the circuit's opinion. The circuit said to Judge Lowry, you did not consider transfer. You should, because this case might well be more fairly and efficiently resolved in New York. Please consider transfer. She did that all while the injunction was pending. Let me just ask one more time. I'm sorry. No, no. You did talk about the Eighth Circuit. But you took the position, and I think the injunction did cover, motions for confirmation that were pending in the district court at the time of the injunction. Your position was, and I think correctly, that the district court here was enjoining federal cases at the district court level that were pending from moving forward. Well, I think Judge Carter said he's not attempting to tell another federal judge what to do. And, in fact, the way the injunction worked out and was construed was those federal cases in Kansas City continued. They continued in the same way that any case would continue, notwithstanding the injunction. He did enjoin, and I think the plaintiffs believe and have said so again. And they've acted consistently with this, that it bars the filing of new actions. But the federal court actions that were going, they continued. They went up to the circuit. They come back. You don't take that position. I don't know. You haven't filed your brief in the Eighth Circuit yet. But are you taking the position that them going to the district court there and getting this preliminary injunction with regard to the settlement violated the injunction? Is it your position that violates the injunction or not? I have to say I'm reluctant. I haven't had to, but I'm very reluctant to take that position, Your Honor. What I'm trying to do, what we're trying to do, we have a very complicated situation. We want to work it out, and we want to get it done, and we're trying to do that, and we have a settlement. What our plan is is to go to the Eighth Circuit to appeal. First of all, we are going to ask for a stay of the injunction in the Eighth Circuit. We're going to appeal Judge Lowery's current ruling to the Eighth Circuit. We want to have the greatest respect for the Western District of Missouri and the Eighth Circuit. We would like that, those cases, all of this to come back to New York. Judge Carter has said he is going. He wrote an opinion. He said, I'm going to look at all these issues. I'm going to decide how these arbitrations fit in. That's what we want to happen. We're not interested. Indeed, we're going to the, we'll be going next week to the Eighth Circuit concerning Judge Lowery. We're not taking the position and not asking this court to take the position that the Eighth Circuit is now divested, or Judge Lowery now can do nothing in the case. We think the Eighth Circuit should deal with that. These are complicated questions. We don't want to have a situation where circuit courts and dis- Could you do me a favor and that is outline what the injunction does not cover. And so I can be very clear in my mind as to what it covers, what it does not cover. And you're saying it doesn't cover the federal cases that are in the Eighth Circuit, or in the larger Eighth Circuit. I think that's correct. Those cases can continue. And also, it doesn't cover arbitrations that are complete but have not been confirmed. No, I think it bars the filing of new actions. Right. I'm not talking about that. I'm talking about actions that are, that might be, that are underway now, or could be underway, that could be confirmed. Maybe there are- We think it does. There are arbitrations that where requests to arbitrate were filed. And those proceedings have not concluded or haven't started. We think it does bar those proceedings. Yes. But there are no pending. We heard from opposing counselors. I want to make sure you agree. There are no pending confirmation proceedings in the Western District of Missouri. All of those have been resolved one way or the other, right? There are no pending ones, correct? Yes. And just to be very clear, there are kind of two categories of those. One, there were 177 of them. 122, there's no federal court jurisdiction. Action in the federal court dismissed. They're over. 55, Judge Lowry has confirmed now and denied transfer. We are going to be appealing that through the federal system. We're going to first ask for a stay, and then we're going to go up through the Eighth Circuit. And that litigation on the 55 will be continuing. But to the extent we had some issue with the injunction potentially being construed as limiting the ability of them to litigate pending confirmation proceedings before the district court in Missouri, that's over. There's nothing left of that. There's nothing present now, right? Yes. But there could be, if a current arbitration, somebody made a motion to confirm an arbitration after that, after today, for instance, you would say that that would be barred. Yeah. Proceeding with the arbitration would be barred, and also filing a confirmation action now. Would be barred. Would be barred, yes. And that's the way I think this has worked out here. And I would say that. I don't sense that your adversary here is taking a different position. I believe, I don't want to speak for them, but I believe they are taking exactly the same position that I'm trying to describe. I would, you know, Judge Bianca, I would just say I do think there are all Writzak cases where pending litigation has been barred, including pending litigation. The Alpine case, for example, where Judge Cote issued an injunction. She had a case the SEC filed in New York, and the defendant went, I think, to Utah. We have never said that. Baldwin is the closest case. We have never affirmed the enjoining of a party from litigating in a pending case. We do, for litigious, vexatious litigation, issue injunctions saying you can't file new actions, sometimes in other jurisdictions. But for pending cases, I don't think we have ever affirmed any injunction. There was one that you cited, Rich V. Spartus, where apparently the district court did that, and we noted it, but we didn't reach it. But I looked. Your Honor, I believe, I don't want to tell the court how to construe a case, but I believe Alpine is a situation where a pending litigation in Utah, as I understand it, what happened was the defendant in the New York case, enjoined by Judge Cote, because they went to Utah and asked the Utah court to issue a ruling inconsistent with the district court's ruling in New York on whether the SEC could pursue the case, and the Second Circuit, I think it's 2019, issued a firm Judge Cote's injunction blocking continued litigation of the Utah case. Of course, that injunction does not reach the district judge in Utah, but it enjoined that party, which is, I think, the model that that happened here.  Thank you. Good morning. May it please the court. Monique Olivier for plaintiffs, the certified class, on behalf of the plan. I think the court's framing of the issue before it is correct. This issue is a narrow one. The district court appropriately and necessarily enjoined the appellants from interfering with its jurisdiction to resolve the merits of the certified class and the plan-wide claims before it. I'd like to go to what the court's questions just were suggesting. What is the scope of the injunction? Here, the injunction is specific, it's limited, and it was necessary. Judge Carter was very careful not to enjoin or make any statements about enjoining the activity of another court. Instead, what he did was he certified a mandatory B1 class. Can I stop you right there for a second? Yes. Are arbitration winners a member of that class? Yes. Are arbitration losers a member of that class? Yes. Okay, thank you. I just want to go back to your other point. If you enjoin a party from continuing litigation in another court, you're, in essence, enjoining that court from doing, other than what it has before it, from doing anything additional. That's, in fact, what the problem is now here with respect to the settlement. I agree with Your Honor. I think that that is the impact, but I think it's important for the court to recognize what the confines of the injunction actually is. We have a mandatory B1 class. It's not a radical act to suggest that all class members have to have their claims resolved in a certified class, and that ultimately is what's happening here. Judge Carter issued a very thoughtful class certification order that was faithful to what this court has ruled, ruled in the Cooper case, ruled in Cohen v. Kaufman, specific to these very unique types of claims that are at issue here, these 50282 plan-wide claims. And it's that package that really is what led the court to certify the class under B1, and then when the appellants continued to operate on their own with respect to these individual claimants who don't have individual claims under 50282, the court then recognized that there was some concern about the frustration of its own jurisdiction to resolve those claims. And in that way, the injunction that was issued was very specific, and he goes back to clarify the specific allegations of our second amended complaint that involved the 50282 allegations. And at this point, the other issue is that the injunction is limited in terms of time. We have, as the court now understands, a settlement in conjunction with the Department of Labor that was painstakingly negotiated that involves plan-wide relief, and which Judge Carter has repeatedly stated that the arbitration claimants will continue to have an opportunity to be heard. And to be clear, it's not as though the arbitration claimants have not been heard already. They have been heard and heard again and heard again by Judge Carter, and he has repeatedly said, come back in, we are going to address this, we will deal with this in the appropriate way when we look at whether there is a settlement or a trial. At that point, any arbitration awards that have been issued will be considered. That is the necessary and appropriate process here, that this court affirm the injunction because it was clearly necessary based on appellant's continued conduct in the Western District of Missouri and within the spectrum of the arbitrations, let Judge Carter resolve this case. There is a pending settlement before him. We have a plan of allocation that has always included all arbitration claimants. And if the appellants have concerns, they can participate. They participated in the mediation in this case, so they can participate. They can express their concerns to Judge Carter. He will address their concerns in kind. There will be a full notice and objections procedure as there needs to be under Rule 23, and then those issues will be decided. But the issue for this court today is did Judge Carter abuse his discretion when he issued the injunction? He did not, and we ask this court to affirm, unless there are any other questions. Thank you. All right, Mr. Schermerhorn, you have three minutes. Thank you, Judge. First, I want to just say we think it is a perverse interpretation of the All Writs Act, which as this court has stated even in Baldwin, it was intended to protect prior judgments. Here it's being used to deny prior judgments. Ducharme was decided four years before Judge Carter certified a mandatory class. These arbitration claimants, hundreds of them had completed their arbitrations before Judge Carter certified a mandatory class. And after he entered a class certification order, there are cases from this court holding that even then, even after the certification of a mandatory class, opt-outs may be permitted, even in a mandatory class where they have previously litigated. The case is Suffolk v. Long Island. We cite it in our brief. Judge Carter said he was going to deal with that. He didn't say those judgments are extinguished. He said we'll deal with that at the appropriate time, right? We think that alone is a violation of the Federal Arbitration Act. I mean, the whole point of arbitration was to- But the question is when is that issue properly before us? Isn't it that issue as to the appropriateness of its decision as to whether it allowed opt-outs or not, the appropriateness of the scope of a proposed settlement, etc., etc.? Aren't those all appropriately before us in final order as opposed to in this order? I really don't think so, because I think the injunction now, the injunction itself, is an abuse of discretion because it violates the purpose of the Federal Arbitration Act.  It violates the appropriateness of using arbitration in a way that is, frankly, inconsistent with our circuit's law, but that bridge hasn't been crossed in the circuit where you practice regularly in the Eighth Circuit. I think we've been fairly clear to you, telling you that what we're looking at today is whether the judge abuses discretion in issuing the injunction under the All Writs Act. I mean, I can understand how you might want to litigate the appropriateness of the class and or the fact that out in Missouri you got a ruling favorable to our arbitrability. Lord knows DST helped you with that. But that's not what we're going to decide, is it? Well, and you don't, Judge. As I said before, Judge Carter can maintain a mandatory class under Suffolk. He can allow parties to opt out. But what he can't do under the All Writs Act, there's no authority for this. What he can't do under the All Writs Act is declare that claims that have been fully litigated in arbitration, some of which have been confirmed, but all of which are owed res judicata, that those now must be included in a mandatory class action. So then I ask you then, when is the appropriate time to decide that? Now or at a later point in time when we have a final judgment, and he's concluded that you are stuck with a settlement as opposed to your arbitration award. Because the injunction has the effect of violating the Federal Arbitration Act, we believe the decision has to be made right now. I don't have the faintest idea what your awards were. I know that the Eighth Circuit said that there were a limited number of awards in which the pleadings for the confirmation of the award met the diversity jurisdiction phrase. So I know that some of the awards had to have been in excess of $75,000, and a vast majority of them were not. So this is like trying to decide the appropriateness of a ghost. The only issue in front of us is, was this an appropriate, given what we know, that there's a line of litigation going on, arbitration in another area involving essentially members of the class as defined by Judge Carter. And was that an appropriate use of an injunction in joining that? Well, for the various reasons that we state, as well as for the reasons that Judge Lowry herself put in her Marjorie First Order, we think it was an abuse of discretion. But to your point- Can I just ask a question? You're saying that it's sort of the opposite of what your adversary was saying, that you can't bar actions in federal court. The injunction could bar proceedings in federal court, but it can't bar arbitrations. Is that what you're saying, that somehow arbitration should be cut out of a court's protecting its jurisdiction via the All Writs Act? No, Judge. I think the All Writs Act doesn't give a district court in the Southern District of New York the authority to reach any claim that has been fully litigated. There's no authority for that. And here, that includes those claims that we had not yet filed petitions to confirm. They're completed. They're owed res judicata, but we hadn't yet filed motions to confirm. It includes those cases where we filed motions to confirm, but diversity jurisdiction wasn't established. And, Judge, to your point, all the claims exceeded the $75,000 threshold. It's just that a lot of them live in Missouri, and so diversity wasn't met for that reason. Just so I'm clear, the practical consequence that you're saying here is that DST is not going to pay on any of the arbitrations, depending on the class resolution, even if they've been completed and confirmed. Is that what we're talking about? I mean, I understood that DST had actually paid off some of the early arbitrations, and they were gone. But the practical effect now is that everything stops. There's a class settlement, presumably, and DST is not going to pay out anything until there's a settlement. Is that understood? Is that my understanding right? My understanding is that DST is not going to pay out any of the arbitration awards. It is also my understanding that part of their settlement, that the minimum amount would be the arbitration award. I thought in the 28-J letter they said the settlement would be the greater of the amount of the arbitration award or what they recover in the settlement. Judge, the terms of the settlement remain secret to me, but what I know, and I can say this with certainty, that is false. It does not pay our clients the amount of their award. I don't know how you can say with certainty that that's false. I mean, you profess not to know, but you're quite certain. That's an interesting way to be in life, I guess. Sounds like something my son used to say to me. Judge, they've indicated in their letters to us and to you, they've said this in a footnote in one of their recent letters, that it is their intention to settle- Don't you hope it to be so? Because if your client's arbitration award is for $25,000, but their pro rata share is for $50,000, you'll gladly advise your client to accept the 50, will you not? Judge- Will you not? Of course- Just answer my question. Will you not advise them to accept the 50? We would, but I want to- Isn't it in their interest? It is, Judge, but I want to be clear what's happening here. That is not what's going on. I mean, DST, as you said- I didn't say it was. You said you didn't know anything about it, and we were presented with a possibility. If it became a reality, I just wanted to know what your view was going to be. I want to be clear, too. It is also our view that the fees that were awarded on arbitration, which are themselves- I know fees are of interest. Well, and they've made the point that they are not going to pay those. In fact, that was the whole point of going to New York. I suspect that's why you're here. Well, Judge, I think it's unfair to suggest I'm only here for my fees. I'm not finding fault with that. I've heard a fee once in a lifetime. And that's a real issue for you. I understand that. Well, it's also a real issue because, as we have explained to the court, what we are recovering in arbitration, if extrapolated to the plan, what our clients are recovering, this is real money, $261 million. The settlement that they described in their letter to you is far short that amount. So there will not be an instance in which my clients get paid this alternative greater amount. It's also not true that we've lost. Now, we have lost a few arbitrations at the first stage, but the arbitration agreement provides for an appeal. Every single one of our clients who lost that first stage won on appeal. So there's no arbitration losers? Not yet. Okay. Now, as a result of the injunction, a lot of those appeals were stopped. And we stopped everything. And I see I'm out of time, but I do want to make one other point. There's been a lot of questions about what does the injunction cover, what does it not? I think that speaks to the fact that the injunction is vague. And that's an issue we briefed, but it's not something that has yet come up. It is vague. The Eighth Circuit couldn't tell whether it covered motions to confirm, for example. The Western District decided it didn't cover motions to confirm. And now, as a result of the Supreme Court- First of all, vagueness is not- It seems to me specificity is not- Because it rules six and five requirement. But this is the All Writs Act. And all it has done is enjoined future litigation in any court, including an arbitration. Isn't that accurate? I mean, in terms of its injunction, it just enjoins those parties from litigating or arbitrating further. Well, if that's true, Judge, then it wouldn't apply to any of the awards that are completed. Because right now, the way the injunction reads is the plaintiffs and class members are barred from litigating the Ferguson plaintiff's ERISA claims. The ERISA claims, the underlying- What about an award that's been confirmed already, but DST isn't paying, and then there's an enforcement proceeding against DST? That's been enjoined, too, isn't it? Well, I don't think so. I mean, if you read his injunction, he specifically says that the parties are enjoined from litigating actions arising out of these paragraphs, which he recites the paragraphs of the underlying ERISA complaint. I think we have the argument. Thank you. Thank you, Judge. I appreciate your time. And we'll reserve decision.